Marcus L. Fillet, J.
(Acting as County Judge). The petitioner brings this proceeding for a writ of coram nobis on the ground that, following a plea of guilty to murder in the second degree and sentence, he was not advised by his attorneys or anyone else of his right to appeal within the time limited therefor. .He was granted a hearing by this court and said hearing* was held on October 21, 1969. The undisputed facts elicited on said hearing were as follows:
Petitioner had been indicted on December 20, 1960, by the Grand Jury of Rensselaer County for murder in the first degree. He was assigned two attorneys to defend him, one an outstanding trial lawyer of over 40 years’ experience, and the other an attorney of considerable experience in the criminal law who is presently County Judge of the County of Rensselaer. Both testified without contradiction at the coram nobis hearing that, following their assignment, they investigated the case 1 ‘ intensively ” and had many conferences with their client, with his family, with the District Attorney (subsequently elected County Judge of Rensselaer County and thereafter elevated to the Supreme Court Bench, and formerly a lecturer on Criminal Law and Procedure at Albany Law School), with the County Judge (subsequently elevated to the Supreme Court Bench), and with others, as a result of which the defendant on October 3, *189 1961 pleaded guilty to a reduced charge of murder in the second degree and received a sentence of 25 years to life; that they explained the plea as well as the consequences to the defendant and his family; that the defendant was apprised of what sentence he could expect if he so pleaded; that they explained the entire situation to him completely; that he comprehended the matter; that as a result thereof he pleaded guilty and received the sentence expected and that he and his family were thoroughly satisfied with the disposition.
Both attorneys testified that they could not remember specifically advising the defendant of his right to appeal from said conviction and sentence, and it is to be presumed that defendant was not so advised.
The defendant testified substantially to what the attorneys testified to and confirmed that he received the sentence which he expected; that it was explained to him; that “I was not deceived; I was satisfied ’ ’; that his family and everyone else concerned were satisfied with the outcome. On cross-examination, he testified that he did not become dissatisfied with the outcome until several months later, after talking with two of his prison mates who suggested to him that he should appeal. There is some proof that, about three years after his guilty plea and sentence, he wrote to one of his said attorneys about the possibility of an appeal, but nothing further was done.
A thorough examination of the authorities indicates a dearth of either statutory or decisional law on the subject of the right of a defendant to be advised of his right to appeal after a plea of guilty. There are many cases giving a defendant, in a cor am nobis proceeding, the right to institute an appeal after the time to appeal has expired, such as where the defendant has been misled or improperly prevented from taking an appeal or where the appeal was not taken due to a defendant’s attorney’s neglect. See People v. Stewart (26 A. D 2d 842) where it was alleged that the assigned trial counsel had failed to fulfill a promise to serve and file a notice of appeal; see, also, People v. Barsey (21 A D 2d 828); People v. Hill (8 N Y 2d 935), where it was alleged that the defendant was insane during the time limited by statute for taking an appeal; People v. Hairston (10 N Y 2d 92) in which it was alleged that the defendant had been unable to file a timely appeal because the prison authorities prevented him; see, also, People v. Adams (12 N Y 2d 417) where defendant’s attorney took a timely appeal to the Appellate Division but never informed the defendant that the appeal had been taken and took no further action on the appeal. Today there can be no question as to the propriety of permitting a *190 defendant to file an appeal after the statutory time has expired in cases where it is apparent that he has been prejudiced through no fault of his own. This court takes no issue with these rulings.
This court, however, holds that prior to the foregoing rules and decisions, which were not in effect at the time of defendant’s conviction and sentence, a defendant was not entitled to be advised of his right to appeal. As late as 1964 the Court of Appeals in the case of People v. Kling (14 N Y 2d 571) affirmed an order of the Appellate Division in the Second Judicial Department which affirmed an order of the Queens County Court denying to a defendant the right to a hearing, one of the defendant’s claims being that he had lost his right to take an appeal by reason of the failure of his court-appointed counsel to file a notice of appeal after the latter had made a promise to defendant to do so.
It may be noted that several years after the defendant herein was convicted and sentenced, each of the four Appellate Departments of the State of New York adopted rules making it mandatory for defense counsel in criminal cases to advise their clients of the right to appeal and the steps to be taken therein, after a conviction or a plea of guilty (see Rules of Supreme Court, Appellate Division, First Department, Pt. 7, rule V [22 NYCRR 606.5]; Rules of Supreme Court, Appellate Division, 'Second Department, Pt. 2, rule III [22 NYCRR 671.3]; Rules of Practice of Supreme Court, Appellate Division, Third Department, Special Rules, “ Duties of Counsel in Criminal Actions and Habeas Corpus Proceedings ”, rule 2 [22 NYCRR 821.2]; Rules of 'Supreme Court, Appellate Division, Fourth Department, Rules Relating to Attorneys, “Duties of Counsel in Criminal Actions ”, rule X [22 NYCRR 1022.13]). Thus, there is no doubt that, at the present time, both by decisional law and judicial rule a defendant in a criminal case is entitled to be advised of his right to appeal. See People v. Callaway (24 N Y 2d 127) and People v. Montgomery (24 N Y 2d 130). This position was clarified by the Court of Appeals in Montgomery (supra) decided on February 27, 1969. Judge Keating, writing for the majority, said in part (pp. 132-133): “ Since we have today swept away the remains of Kling and Marchese (People v. Callaway 24 N Y 2d 127) we must decide petitioner’s claim unencumbered by these prior precedents. * * * Our decision, very simply, demonstrates a fundamental concern that defendants be informed of their right to appeal and that, where an attorney, whether assigned or retained fails to apprise Ms client of this vital privilege, there is no justification for making *191 the defendant suffer for his attorney’s failing. * * * It is not clear that, at the time this defendant was convicted [Dec. 30, 1957], there was any positive obligation imposed on assigned counsel to inform defendants of their right to appeal. (People v. Kling [supra].” Judge Breitel, in a strong dissenting opinion, fortifies Judge Keating’s statement as to the applicability of Kling (p. 135): “As the majority observes there was no mandated responsibility on the lawyers in 1957 to so advise a convicted defendant [of his right to appeal] and until today there was no obligation on the court.” This same position is also taken by Justice Schweitzer in People v. Grant (N.Y.L.J., July 10, 1969, p. 10, col. 1). Likewise the same ruling was followed in People v. James (N.Y.L.J., July 21, 1969, p. 11, col, 7).
Therefore, this court decides that as a matter of law the defendant was not entitled to be advised of his right to appeal.
This court also holds that the defendant should be denied his present application on the facts adduced at the aforesaid hearing.
Advising him of his right to appeal would constitute an exercise in futility and a senseless extension of the meaning of due process. Defendant had been examined by prison psychiatrists and was determined to be of a mental age of 9 years and 10 months. He was represented by two of the most competent and experienced lawyers in the community. The District Attorney was an expert in criminal procedure and the Trial Judge had years of experience in the criminal Bench. It would seem reasonable to assume that within this atmosphere the defendant’s rights were jealously guarded and well protected. .The attorneys had conferred extensively with the defendant, the District Attorney, the Judge, the defendant’s family and others, and after advising their client, both he and they were firmly convinced that the disposition was in the best interests of the defendant. The defendant was well satisfied with the disposition. It is also reasonable to assume that if the defendant’s attorneys had not been satisfied or thought that any prejudicial error had been committed, they would have brought it to the defendant’s attention and recommended an appeal or at least advised him of his right to appeal. However, all those interested were content with the disposition. Be it remembered that at the time of the conviction, if the defendant had not pleaded guilty and had stood trial, it is conceivable that he could have been found guilty and received the death penalty. (Penal Law, §§ 1045 and 1045-a prior to Sept. 1, 1967.) For *192 the defendant to avoid the death penalty and to have received a sentence of 25 years to life, with the possibility of earlier discharge for good behavior, appears to be good cause for defendant and his counsel to be satisfied with the plea and sentence and to render academic any thought of appeal.
What would the defendant reasonably have done had he been advised of his right to appeal? Having in mind his mental age, it is doubtful if he himself could have arrived at a sound, independent judgment but that he would look to his attorneys to advise him. That is what they were there for and that is what they did. It is evident that his attorneys did not recommend an appeal, for, from their evaluation of the legal situation, there was nothing to appeal from nor would there be any probable benefit accruing to their client from the taking of an appeal. On the contrary, it is possible that, if they recommended an appeal and the appeal were sustained and the case sent back for trial, the outcome might be the death penalty for their client. They obviously chose to avoid this disastrous possibility. The only persons who thought the defendant should appeal were two prison mates who certainly did not. have the interest of the defendant at heart as did his counsel. To quote Judge Boehm in People v. Haynes (60 Misc 2d 671, 672, 673): “In effect, what petitioner is requesting is a hearing for a resentencing solely because he was not advised of his right to appeal. Nothing more. * * * It is apparent therefore, that there is a genuine and reasonable distinction between the post-trial and post-plea situation; and an application such as the one at bar, being post-plea, requires at the very least a minimal statement of alleged error from which an appeal is desired. In the absence of any allegations of error, when all that is asserted is a right without a reason, then this court is of the opinion that the application is without substance. The law deals with remedies, not rituals.”
From the facts adduced in the hearing, it is apparent that the only basis for the defendant’s requesting the right to appeal is that, after the statutory time to appeal had expired, he changed his mind from satisfaction to dissatisfaction with the disposition. This is not sufficient cause to extend defendant’s statutory time in which to appeal.
For the foregoing reasons, petitioner’s application is denied, on the law and the facts.